# AFFIDAVIT

I, David E. Sutkus, being duly sworn, declare and state as follows:

## Introduction

1.     I am a Special Agent ("SA") with the Export-Import Bank of the United States ("Ex-Im"), Office of Inspector General ("OIG") and have been so employed since February 2, 2009.  As a Special Agent with the Ex-Im OIG and in accordance with the law enforcement powers granted to me by the Attorney General of the United States, pursuant to Section 6(e) of the Inspector General Act of 1978 (IG Act), P.L. 95-452, 5 U.S.C. App.3, as amended, I have law enforcement authority to seek and execute warrants for arrest and search & seizure.  Prior to my employment with Ex-Im OIG, I was employed as a Special Agent for the Treasury Inspector General for Tax Administration (TIGTA) for approximately four years.  I have completed Basic Agent Training at the Federal Law Enforcement Training Center (FLETC), and have received advanced training in asset forfeiture, money laundering, and Internet-related investigations.  Prior to TIGTA, I served as a Special Agent with the Defense Criminal Investigative Service (DCIS), Treasury Inspector General (TIG), Environmental Protection Agency Office of Inspector General (EPA-OIG) and the Naval Criminal Investigative Service (NCIS). Over the course of a diverse 25-year law enforcement career, I have authored and sworn to numerous affidavits in support of federal search and arrest warrants.  I have personally participated in the execution of search warrants and the seizure of evidence, including computers and other electronic equipment, from both businesses and personal residences. I am an "investigative or law enforcement officer" of the United States within the

meaning of 18 U.S.C. § 2510(7), in that I am empowered by law to conduct investigations and to make arrests for federal felony offenses.

2. I make this affidavit in support of an application for a search warrant in accordance with 18 U.S.C. § 2703(a) and Federal Rule of Criminal Procedure 41 to search computer servers for voice mail messages for cellular telephone number 847-312-8170, controlled by Cingular Wireless, whose records are maintained by AT&T Mobility LLC. The information to be searched is described in the following paragraphs and in Attachment A. As set forth herein, there is probable cause to believe that the computer systems of Cingular Wireless contain evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 371 and 1343 (conspiracy and wire fraud).

3. The information contained in this Affidavit is based upon my personal knowledge, interviews of witnesses, my review of documents and law enforcement databases, information communicated to me by other law enforcement personnel with knowledge of this investigation, and knowledge gained through training and work experience. The purpose of this affidavit is limited to showing that probable cause exists to support the issuance of a search warrant. Accordingly, while this affidavit contains all the material information I am aware of that is pertinent to the requested search warrant, it does not include each and every fact known by me or other investigators concerning the investigation.

## The Export-Import Bank of the United States

4. Ex-Im is an independent agency of the executive branch of the United States and is located at 811 Vermont Avenue N.W., Washington, D.C., 20571. It is also the official

export credit agency of the United States. Ex-Im's mission is to assist in the export of United States goods and services to companies overseas. One of the ways Ex-Im fulfills this mission is by issuing loan guarantees or loan insurance policies to United States financial institutions on behalf of creditworthy foreign companies that obtain loans for the purpose of purchasing United States goods.

5. Once Ex-Im issues a loan guarantee or a loan insurance policy, it agrees to pay the United States financial institution the outstanding loan balance owed by the foreign company if that company defaults on its loan repayment obligations. Before agreeing to issue such a guarantee or insurance policy, Ex-Im requires the United States exporter – the person or entity shipping the United States goods on behalf of the foreign borrower – to certify to the financial institution and Ex-Im the type, amount, and value of the United States goods that it has shipped. In addition, if the transaction was for a Medium Term policy, which applies to loans of up to $10 million to purchase capital goods with terms of no more than five years, the exporter must also certify that the goods were made in the United States. If a loan defaults and goes to claims status, Ex-Im will pay the lending U.S. financial institution the balance owed on the loan and will initiate a collection action against the foreign borrower.

<u>Investigation</u>

6. The following is a summary of the core investigative information gathered to date in this case:

    (A) Paul Wilson is a citizen of the United States who was last known to reside at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ From in and

          around 1999 through in and around February 2008, Wilson was employed as the International Trade Finance Manger for Goss International Americas of Durham, New Hampshire. Goss is a producer of commercial printing presses. Wilson was responsible for securing financing for foreign purchasers of Goss's products and working with Ex-Im Bank to obtain guarantees for loans extended to Goss's foreign customers.

    (B)    During the period 2004-2006, Wilson, his wife, Tomoko Wilson, and a friend, Judy Bender, of Sharon, Massachusetts, acted as the owners and managers of Zephyr Capital in Canton, MA. Zephyr Capital was later reincorporated on August 28, 2006, under the name Zephyr Financial LLC, by Paul Wilson and maintained the managers as Tomoko Wilson and Judy Bender. Paul Wilson, James Bender (husband of Judy Bender and Zephyr Financial business partner of Paul Wilson) and others, submitted or assisted in submitting Zephyr Financial, LLC invoices to some of Goss's foreign customers billing them for services that were never rendered, and, if rendered, had been performed by Goss, Ex-Im Bank, and others associated with a particular transaction.

    (C)    Bank records for Zephyr Capital and Zephyr Financial show that at least $162,231 was paid by Goss and Ex-Im Bank customers via wire transfers based on fraudulent invoices issued by Zephyr. The bank records also show at least $14,945 being paid out to either James or Judy Bender.

7.    On June 8, 2011, Paul Wilson was indicted by a Federal Grand Jury in the District

of New Hampshire for eight counts of wire fraud and subsequently arrested on July 6, 2011, based upon an arrest warrant issued by the court. A change of plea hearing is currently scheduled in Wilson's case for January 30, 2012.

8. On September 30, 2011, Wilson, through his counsel, consented to proffer information to investigators to assist them in the continuation of this investigation. Wilson and the United States Attorney's Office for the District of New Hampshire entered into a proffer agreement under which, in exchange for Wilson's truthful statements, the United States agreed not to make direct use of statements and information he provided during the proffer interview against him in any subsequent court hearings or proceedings. The United States retained the right, however, to indirectly use Wilson's statements and information he provided against him in subsequent court proceedings. Wilson admitted to participating in a scheme with James Bender to defraud Goss and Ex-Im Bank customers. He provided a detailed account of some aspects of the scheme, but the following is a summary account of his admissions:

(A) Wilson said the fraudulent scheme involved the formation of a company, Zephyr Capital LLC, which later became Zephyr Financial LLC, that he and Bender used to send bogus invoices to and fraudulently obtain payments from Goss and Ex-Im customers for financial services that were not rendered by Zephyr. Wilson said that Bender was involved at some level with all aspects of the fraudulent scheme and that he collected a share of the illicit proceeds generated by the scheme.

(B) Wilson said he had monthly calls with Bender up until sometime in 2010

when Bender stopped returning his calls.

9. At about 2:15 p.m. on October 24, 2011, Ex-Im Bank OIG Special Agent Daniel H. Stitt Jr., and I interviewed James Bender under non-custodial circumstances at his residence in Sharon, Massachusetts. Bender admitted to participating with Wilson in the creation of Zephyr, but he said "Zephyr was all Paul's idea." Bender said he conducted credit underwriting on deals that were brought to him by Wilson. Bender acknowledged that Zephyr tried to do business with Goss and that all of the Goss business went to Sovereign Bank after Goss did its own underwriting for every transaction. Bender also said that he did not receive any compensation from Zephyr, but when SA Stitt and I told him we knew that assertion was false, Bender said, "Well, I got about $12,000 I think." Bender stated that he received a voice mail from Wilson approximately three months ago in which Wilson said he was calling just to say hello. Bender said he did not return the call and has not spoken to Wilson in about three years.

10. On November 2, 2011, I contacted Paul Wilson telephonically after obtaining consent from Wilson's counsel to contact him. I called Wilson on his employer issued cellular telephone, which is assigned telephone number 847-312-8170. Wilson told me the following:

(A) At about 8:25 p.m. central time on October 24, 2011, Wilson received a call on his employer issued cellular telephone from Bender who was calling from telephone number ▮▮▮▮▮▮▮▮ Bender left a message on Wilson's voice mail stating that he was reaching out to Wilson to see how he and his family were doing and to give him a call. Wilson stated that he did not return the call.

(B)　　　　At about 10:06 a.m. central time on October 25, 2011, Wilson received a call on his work cell phone from telephone number ▮▮▮▮▮▮▮▮. Wilson stated that he answered the call, which turned out to be Bender again. Wilson told Bender that he was not legally allowed to speak to him. Bender said he just wanted to know if Wilson had received any strange calls recently. Wilson said he told him no. Bender then said he had hired an attorney and that he would call him (Wilson). Wilson reported that he said, "O.K." and that he had to go and that was the end of the call.

(C)　　　　On October 28, 2011, at approximately 12:09 p.m. central time, Wilson received another call on his work cell phone from ▮▮▮▮▮▮▮▮. Wilson did not answer the call, but later found that Bender had left him a voice mail message with his (Bender's) attorney's name, which Wilson recalled as Jim McNally, and telephone number and asked Wilson to call him back with his attorney's name and number. Wilson stated that he called Bender back at the same number at approximately 1:00 p.m. that same day and provided Bender with Attorney Peter Anderson's name and number. Wilson said that was all he said to Bender and terminated the call.

(D)　　　　Wilson said that he had not deleted any of the voice mail messages Bender left him and that they remain in storage on his voice mail account with his cellular telephone services provider.

11.　　　　Telephone service number 847-312-8170 is assigned to Cingular Wireless, Inc., whose records are maintained by AT&T Mobility LLC. On November 10, 2011, the

United States Attorney's Office for the District of New Hampshire, sent a letter to AT&T Mobility requesting that under 18 U.S.C. § 2703(f), for the period of October 24, 2011, through October 29, 2011, AT&T Mobility preserve for 90 days all stored communications, records, and other evidence in its possession associated with telephone service number 847-312-8170.  On November 25, 2011, AT&T Mobility acknowledged that it had received and processed the United States' preservation request.

### Information To Be Searched And Things To Be Seized

12. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require AT&T Mobility to disclose to the government copies of the records and other information including the content of communications regarding stored voice mail and incoming and outgoing calls and text messages associated with telephone service number 847-312-8170 for the period October 24, 2011, through October 29, 2011.  Upon receipt of the requested information, government-authorized persons will review it to locate voice mail messages, texts, and other information relevant to James Bender.

13. Additionally, I request that the Court authorize the agents conducting the search to obtain the full contents of the stored voice mail messages identified in paragraph 12, although some of those voice mail messages are unlikely to relate to potential violations of 18 U.S.C. Section 1343 (wire fraud).  It would be impractical for the cellular telephone service provider to determine which voice mail messages are pertinent.  It would also be impractical for the cellular telephone service provider to allow the agents to search the

accounts on their computers. Finally, to make sure that any evidence is properly preserved, the search by the agents is best conducted in a controlled environment on agency premises.  Once such a search is conducted, the searching agents will separate pertinent voice mail messages from the remaining voice mail messages.

## Conclusion

14.     Based on the information in this Affidavit, probable cause exists to believe that Bender participated in a scheme with Wilson to commit wire fraud involving loans guaranteed by Ex-Im Bank, and that a search of the requested cellular telephone records, including stored voice mail messages, is likely to reveal evidence that will assist the investigation by establishing that Bender had access to and communicated with Wilson and will also reveal whether, during the relevant time frame, Bender left other messages or made other attempts to communicate with Wilson that have not been reported to investigators.

15.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).

16.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

/s/ David E. Sutkus
David E. Sutkus
Special Agent
Office of the Inspector General
Office of Investigations
Export-Import Bank of the United States

Sworn and subscribed to before me this 13th day of January, 2012, at Concord, New Hampshire.

_____
Landya Boyer McCafferty
United States Magistrate Judge